COUNTY OF SUFFOLK: STATE OF NEW YORK
JUSTICE COURT: TOWN OF EAST HAMPTON
------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                                                            **AFFIDAVIT**

William E. Cuthbert,

                                                            Docket No. 14010313

                                Defendant.
------------------------------------------------------------x

STATE OF NEW YORK   )ss:
COUNTY OF SUFFOLK   )

William E. Cuthbert, being duly sworn, deposes and states:

1. I am the defendant in the above captioned matter.

2. I make this affidavit in support of the relief sought in the annexed Notice of Motion.

3. On the morning of January 23, 2014 at approximately 10:15 A.M., I was involved in a motor vehicle accident on Abrahams Path at the intersection of Accabonac Road in the Town of East Hampton. That incident involved another vehicle sliding through the intersection on the ice and then striking my vehicle while I was stopped at a stop sign.

4. Seeing this vehicle sliding towards me and being unable to move and avoid the collision because of the icy conditions was a distressing experience and although nobody was seriously injured, but I was quite shaken up and upset afterwards.

5. After briefly exiting my vehicle to assess the damage and to see if the other driver was injured, I called my girlfriend Jana Bennett and asked her to call the police.

6. I then returned to my vehicle, put my emergency flashers on and did not leave the point of impact because I wanted the police to first examine the accident scene. I gathered my documents and waited for the arrival of the police.

7. I then noticed that two vehicles, a passenger car and a John K. Ott Cesspool service truck were behind my stopped vehicle. I got out of my truck to explain the reason I was not moving to the truck driver. The truck engine was very loud.

8. Almost immediately a law enforcement SUV arrived and pulled up next to the John K. Ott truck. The officer lowered his passenger side window. I then leaned down and told him that I had just been in a motor vehicle accident and was waiting for him to arrive before moving my vehicle.

9. I was not engaged in any illegal activity when this officer arrived at the scene of the accident.

10. The officer barked that that I should move my vehicle, so I began walking back to my van to do so.

11. I then heard loud yelling, but the words were indecipherable over the roar of the John K. Ott truck's diesel engine, so I walked back to the police SUV to clarify not knowing if he was talking to me or trying to give me further instructions.

12. As I got closer, I noticed that the police officer was actually talking to the driver of the John K. Ott truck and may have been acquainted with him.

13. The officer then screamed at me to get the van moved, so I turned around a second time and began walking back to my van.

14. Treading carefully along the slippery icy road, I was struck from behind without warning by a moving vehicle which turned out to be the police SUV brushing against my thigh of my left leg just below the hip.

15. Instinctively, I slapped at the truck with my left hand as the entire left side of my torso erupted in pain as I was struck by the side mirror of the police SUV. The police officer driving the SUV was literally plowing me off the street and the impact nearly knocked me over.

16. Struggling to keep my balance as the police SUV slithered by, I made my way on the icy road back to my van. The police SUV then pulled over at the intersection and I drove my van stopping about four car lengths ahead of him.

17. I exited my van and went over to the police officer who was now out of his vehicle.

18. I asked the officer if I parked the van alright and also asked him if he was aware that he has struck me with his SUV. The officer did not answer my questions.

19. I then requested that the officer call a field sergeant to the scene because I wanted an accurate account of what had transpired. The officer replied that he didn't like my attitude and told me I was under arrest. He directed me to put my hands behind my back and I complied.

20. The officer never asked for my license or insurance card and never inquired about the accident.

21. I was not engaged in any illegal act when I was placed under arrest and I did not resist arrest in any way.

22. The officer then twisted my arms and wrists in opposite directions, up and to the right side of my upper back and locked the handcuffs in an opposing way, very hard and very tight. I felt an instant searing pain and pain shot up my arms as the handcuffs cut into my flesh at my wrists. I experienced a numb tingling sensation seep into my hands as the blood supply was being cut off.

23. In incredible agony, I cried out to the officer. Every time I did so, he bent my arms to increase the pain even more which terrorized me. I begged him to loosen the cuffs. It became obvious that this man wanted to punish me.

24. He then kneed me in the back of my legs and pushed me flat over the police SUV hood while verbally tearing into me. I felt my life was in danger.

25. I cried out for help and things got worse. He was using my screams of pain as a reason to torture me. He screamed at me, twisted and pulled and kneed me. I was completely terrorized by this assault.

26. Then a second police officer arrived. I begged him for help. I begged him to adjust the handcuffs and put them on properly. I told the second officer that the first officer had hit me with his SUV and put the cuffs on me in an illegal manner. The second officer joined in on the attack causing me to scream in fear and desperation. The two policemen pulled my twisted and handcuffed arms upward.

27. The second officer began to shout in my right ear. His face was inches from my ear and he shouted as loud as he could causing me more terror and physical pain. The yelling lasted about ten minutes.

28. The two officers pushed my arms over my head as if trying to snap my shoulder joints and cut off my airway and my ability to breathe was almost completely constricted as if to stop my screaming. The two officers were also verbally taunted me suggesting that I leave town.

29. I was then thrown face down onto the cold ground. There was a slight depression in the ground and the second officer had his knee in my back with all his weight on my spine and kidneys and I was having difficulty breathing. I told the officer he was killing me and begged him to stop. He responded that he didn't like my attitude and they persisted in pushing me firmly against the ice.

30. Eventually my girlfriend Jana Bennett arrived and the officers put me in a sitting position on the ground braced against a snow bank which allowed me to breathe easier, but the temperature was extremely cold that day and I was concerned about hypothermia. At that point the handcuffs had dug deeply into my wrists and my hands were numb and without sensation. I felt seriously injured and asked for an ambulance. The two officers ignored me and I continued to shiver on the freezing pavement braced against a snow bank in wet pants. My legs were stiff and my arms started to throb in pain. My neck was in pain and breathing was difficult, and I wondered f I would have a heart attack.

me and I continued to shiver on the freezing pavement braced against a snow bank in wet pants. My legs were stiff and my arms started to throb in pain. My neck was in pain and breathing was difficult, and I wondered f I would have a heart attack.

31. Another police car eventually arrived after what seemed like an hour to take me away. Because my legs were numb from the cold and would not support me, the officers lifted me by the arms and dragged me to this police car. They told me to lift up my legs, and I tried, but my body did not respond. I simply could not move my cold, numb legs.

32. The officers then hog tied me with my hands and legs tied together and put me face down on the rear seat of the police car. I had no feeling from my waist to my feet and when the police closed the rear car door it slammed into my head.

33. When I arrived at East Hampton Police Headquarters I was the target of menacing threats and taunts. I was in excruciating pain and again asked for an ambulance with the handcuffs still harshly fastened to my wrists. No ambulance was provided.

34. I was eventually placed in a cell and the handcuffs were removed. I was in physical distress, wet, cold, thirsty, and demoralized.

35. After the police shift change later that afternoon, an officer took pictures of my hands and wrists. I was then released on bail.

_William E. Cuthbert_
William E. Cuthbert

Sworn to before me this
24th day of April, 2014

_Notary signature_
Notary Public

PATRICK J. GUNN
Attorney and Counselor at Law
State of New York - No. 02GU6122129
Qualified in Suffolk County
Commission Expires February 22, 2017

# FLEMING & DARRELL PLLC
## Attorneys at Law

Ten Gingerbread Lane
East Hampton, New York 11937-2422

William J. Fleming
wjfleming@fleminganddarrell.com

Trevor M. Darrell
trevor@fleminganddarrell.com

Patrick J. Gunn
patgunn@fleminganddarrell.com

Telephone
(631) 324-8778

Facsimile
(631) 329-3062

August 8, 2014

William E. Cuthbert
183 Hog Creek Road
East Hampton, N.Y. 11937

Re: *People v. William E. Cuthbert*
Docket No. 14010313

William:

As you are aware, Judge Tekulsky has denied the substantive aspects of the motion submitted, and regrettably does not appear to have seen the logic or legal merit of any of the legal arguments I put forwards on your behalf. Your case was adjourned until Thursday, August 21, 2014; however, I am on vacation that week and have asked that the matter be further adjourned until **Thursday, September 4, 2014 at 9:30 AM**.

It is now time for you to make a decision in terms of whether to take a plea or go to trial, and that decision will need to be relayed to Judge Tekulsky on September 4th. Any trial will likely occur sometime in the fall, possibly October or November. Also, as I previously advised you and as detailed in our initial retainer agreement, there will be additional legal fee for hearings and trial in the amount of $5000.00

To review your options, The District Attorney has offered (2) plea bargain options:

1. Plead guilty to Resisting Arrest (Class A Misdemeanor)
   Sentence: Conditional Discharge, No jail, No 3 years probation, Fine, Remaining charges dismissed. Case Closed.

-OR-

2. Complete 100 Hours of Community Service at a local not for profit organization, then Plead guilty to one Disorderly Conduct charge (A Violation, not a crime) Misdemeanor charge dismissed
   Sentence: Fine only

Should you decide to reject the plea bargain offers and risk going to trial, and are ultimately found guilty of the Misdemeanor criminal charge, you could be sentenced to up to one year in jail or a combination of several months in jail and 3 years of cumbersome and intrusive probation.

Page 1 of 2

Additionally, if you are found guilty at trial of the disorderly conduct and harassment violations, you could be sentenced to 15 days in jail on each charge.

Since you already have a felony criminal record, albeit from a long time ago, an actual plea to, or conviction of a misdemeanor would not further impact your options in life, so I strongly urge you to weigh the options carefully before you risk going to trial, both in terms of the financial cost of a trial and the potential sentencing impact on your life should you lose.

I realize that you have a story to tell and believe you were mistreated, but it is important to remember the difference between raising a winning defense to the criminal charges you are facing versus establishing civil liability for the conduct of the police. The latter will not be the focus of the criminal trial and much of what you want to say about how you were treated will most likely not be permitted.

Based on my review of the facts and evidence, as well as the Court's decision on the motion, I do not believe that you have a strong defense to the charges, and that it is very unlikely that you will be victorious at trial. I strongly recommend that you consider one of the plea options offered, but that is ultimately your choice.

Please set up an appointment and come see me sometime before September 4th keeping in mind that I am away from August 20th to 27th.

Sincerely,

Patrick J. Gunn

Justice Court: Town of East Hampton
County of Suffolk: State of New York

-------------------------------------------------x

The People of the State of New York                    Docket No. 14-010313

-against-

William Cuthbert,

Defendant.

-------------------------------------------------x

    This case arises out of a traffic accident wherein the defendant's vehicle was struck by another's vehicle at a busy intersection in the Town of East Hampton. East Hampton Town Police Officer Frank Trotta appeared on the scene and it is clear that a confrontation with the defendant ensued, although there is a factual dispute as to who said what and who did what to whom. What is clear is that the end result was that the defendant was arrested, forcibly handcuffed and charged with violations of Penal Law § 205.30, Resisting Arrest, § 240.20(3) Disorderly Conduct and § 240.26(1) Harassment.

    The defendant, by a Notice of Motion with supporting papers dated April 25, 2014, now moves for an Order dismissing all of the charges, on a number of grounds and, in the alternative, seeking a Bill of Particulars and, also in the alternative, seeking "Probable Cause", "Sandoval" and "Clayton" hearings. The People, by an Affirmation in Opposition dated June 13, 2014, oppose this relief.

    The Court rules on each of the defendant's arguments as follows:

## 1. Information Charging "Disorderly Conduct" is Jurisdictionally Defective:

    The defendant argues that the Information charging the defendant with Disorderly Conduct pursuant to Penal Law § 240.20(3) is jurisdictionally defective as it does not contain a factual allegation that the defendant intended to "….cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof…" The defendant focuses on what he claims is the conclusory word "wrongfully" in the Information, arguing that such word cannot in and of itself meet the requirement that each and every element of the statute needs to be complied with. While this argument may be correct in theory, the defense ignores the fact that the Information must be read in its entirety to determine whether it meets the requirement of Criminal Procedure Law § 100.40.


In this case, in addition to citing the specific language of Penal Law § 240.20(3), the Information contains the following language:

"To Wit: The Defendant........with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof in a public place, he uses abusive or obscene language, or makes an obscene gesture: in that, the defendant did wrongfully state obscenities in public.........<u>Defendant was standing inches of Police Officer Frank Trotta #195 while screaming in a</u> loud voice in sum and substance fuck, you you fucking pig! I am not listening to you, you fucking pig, asshole! Get another officer here you fucking asshole!"

It is clear that "....the required intent, i.e. the culpable mental state required for conviction, can be inferred from both the facts alleged in the ....Information and the accusatory part thereof (citations omitted)." <u>People v. Horner, 5 Misc. 3d 134 (A), 799 N.Y.S.2d 163 (Table), 2004 N.Y. Slip Op. 51457(U)(App.Term. , 9th & 10th Judicial Districts 2004).</u> That the defendant may have either intentionally caused public inconvenient, annoyance or alarm, or recklessly created a risk thereof in a public place, to wit, <u>at a busy intersection in</u> the Town of East Hampton by screaming obscenities at a police officer, may be inferred from those very facts.

For these reasons, the Court finds the Information charging the defendant with a violation of Penal Law § 240.20(3) to be sufficient pursuant to Criminal Procedure Law § 100.40(1).

## 2. Language Alleged as Basis for Disorderly Conduct is Constitutionally Protected:

The defendant's broad argument that the alleged obscenities that serve as the basis for the Disorderly Conduct charge represent "...protected free speech under the First Amendment of (the) Constitution of the United States" , is patently false. Without reviewing the history of decisions from the Supreme Court of the United States, carving out exceptions for First Amendment protection to many varieties of speech – including obscenity – it is clear that in the State of New York, pursuant to Penal Law § 240.20(3), obscene language and/or gestures are not protected where they otherwise meet the requirements of that statute.

## 3. Alleged Statements/Conduct Do Not Rise To The Level of Disorderly Conduct:

Inasmuch as the Information makes out a *prima* facie case, this portion of the defendant's motion papers is best left to a Motion to Dismiss at the end of the People's case at trial, or for a Motion for a Directed Verdict, or for a Motion to Set Aside a Jury Verdict of "Guilty" after trial. It is certainly not clear to this Court that the conduct complained of in the Information is, as a matter of law, insufficient to support the charge.

### 4. Invalid Arrest & Poisonous Tree:

The defense argues that an illegal arrest for Disorderly Conduct must necessarily invalidate subsequent arrest for Resisting Arrest and Harassment. In light of the Court's decision, this point is moot.

### 5. Dismissal In the Interests of Justice/"Clayton" Hearing:

The defendant has failed to specifically address any of the ten (10) factors, to be considered individually and collectively, in determining whether a dismissal in the "interest of justice" is appropriate – other than to argue that the defendant was treated inappropriately by the police officers post arrest. Under the circumstances, this branch of the defendant's motion is denied and there is no basis to have a "Clayton" hearing.

### 6. Order for a Bill of Particulars and Discovery:

The defendant seeks a Bill of Particulars with respect to the following: a) The name and shield number of the second police officer on the scene of the MVA; b) The name and shield number of the third police officer on the scene who transported the defendant to headquarters; and c) The name and shield number of the police officer who photographed the defendant's hands at police headquarters.

The People oppose this request on the grounds that a Bill of Particulars is not authorized in any instance "…other than where an indictment is pending", citing Criminal Procedure Law § 200.95. The basis for this opposition is misplaced, in light of Criminal Procedure Law § 100.45(4), which provides that the provisions of Criminal Procedure Law § 200.95 also apply to informations and misdemeanor informations such as those in this case.

Accordingly, this branch of the defendant's motion is granted and the People are directed to supply the defendant with the requested information within twenty (20) days hereof.

In addition, the People have made a demand for a video recording allegedly made by the defendant's "paramour". The defendant is directed to make arrangements with the People to view this recording, if it exists, within twenty (20) days hereof.

3

## 7. Request for Hearings:

a) Probable Cause: The defendant has failed to allege any facts in support of this portion of his motion and it is, therefore, denied.

b) *Sandoval* Hearing: This portion of the defendant's motion is granted, with such a hearing to be held immediately prior to trial.

The foregoing constitutes the Decision and Order of this Court.

Dated: 7 August 2014
East Hampton, New York

*[signature]*

**STEVEN TEKULSKY**
**East Hampton Town Justice**

4