Case 2:18-cv-04796-JS-AYS   Document 19-5   Filed 06/04/19   Page 1 of 33 PageID #: 286

2014-10984

To be submitted

# THE SUPREME COURT OF THE STATE OF NEW YORK
## APPELLATE TERM: SECOND DEPARTMENT
### APPEAL NUMBER 2014-10984

---

## THE STATE OF NEW YORK

### v.

## WILLIAM CUTHBERT

---

## BRIEF OF APPELLANT

---

DEL ATWELL
Attorney for Appellant
39 5TH Street
East Hampton, NY 11937
631-267-2067

## TABLE OF CONTENTS

STATEMENT PURSUANT TO C.P.L.R. 5531 ............................. 2

PRELIMINARY STATEMENT ............................................ 3

QUESTIONS PRESENTED ............................................... 3

STATEMENT OF FACTS ............................................... 4

LEGAL ARGUMENT ................................................. 14

POINT I

THE LOWER COURT ERRED IN DENYING THE PRE-TRIAL MOTION TO DISMISS FOR FACIAL INSUFFICIENCY.

A. The accusatory instrument for disorderly conduct is facially insufficient because it does not factually allege a public dimension.

B. The resisting arrest charge is facially insufficient because it is not predicated on an authorized underlying arrest for disorderly conduct.

POINT II

THE LOWER COURT ERRED IN DENYING THE 290.10 MOTION.

POINT III

THE LOWER COURT ERRED IN DENYING THE 330.30 MOTION.

CONCLUSION ...................................................... 32

CERTIFICATE OF COMPLIANCE ....................................... 32

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE TERM: SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

respondent,

-*against*-

WILLIAM CUTHBERT

appellant.

STATEMENT PURSUANT TO RULE 5531

1. The docket number in the court below was 14010313

2. The full names of the original parties were: People of the State of New York against William Cuthbert. This appeal is on behalf of William Cuthbert.

3. This action was commenced in Justice Court, Township of East Hampton, Suffolk County.

4. This action was commenced by the filing of an information.

5. This appeal is from a judgment convicting appellant of disorderly conduct and resisting arrest.

6. This is an appeal from a judgment of conviction rendered December 4, 2014.

7. Appellant is appealing on the original record.

## PRELIMINARY STATEMENT

This is an appeal from a judgment of the Justice Court, Township of East Hampton, Suffolk County rendered December 4, 2014, convicting appellant after a jury trial of disorderly conduct and resisting arrest. He was sentenced to a fine of $2,000 plus a $330 surcharge. A timely Notice of Appeal was filed. No stay of proceedings has been sought.

## QUESTIONS PRESENTED

1. Did the lower court err in denying the pre-trial motion to dismiss for facial insufficiency?

    a. Is the accusatory instrument for disorderly conduct facially insufficient because it does not factually allege a public dimension?

    b. Is the resisting arrest charge facially insufficient because it is not predicated on an authorized underlying arrest for disorderly conduct?

2. Did the lower court err in denying the 290.10 motion?

3. Did the lower court err in denying the 330.30 motion?

## STATEMENT OF FACTS

The appellant, William Cuthbert was charged in the East Hampton Town

Justice Court with disorderly conduct, resisting arrest and harassment. The

violation information for disorderly conduct was alleged pursuant to Penal Law

240.20 (3). The factual section of the information alleges as follows:

"to Wit: THE DEFENDANT, ON JANUARY 23, 2014, AT ABOUT
10:56 AM, AT THE CORNER OF ABRAHAMS PATH AND ACCABONAC
ROAD, IN THE TOWNOF EAST HAMPTON, SUFFOLK COUNTY, NEW
YORK WITH INTENT TO CAUSE A PUBLIC INCONVENIENCE,
ANNOYANCE OR ALARM, OR RECKLESSLY CREATING A RISK
THEROF, IN A PUBLIC PLACE HE USES ABUSIVE OR OBSENE
LANGUAGE, OR MAKES AN OBSENE GESTURE; IN THAT, THE
DEFENDANT DID WRONGFULLY STATE OBSCENITIES IN PUBLIC
AFTER BEING REQUESTED BY POLICE OFFICER FRANK TROTTA # 95
TO MOVE HIS VEHICLE FROM THE INTERSECTION AFTER BEING
INVOLVED IN A REPORTABLE MOTOR VEHICLE ACCIDENT.
DEFENDANT WAS STANDING WITHIN INCHES OF POLICE OFFICER
FRANK TROTTA #195 WHILE SCREAMING IN A LOUD VOICE IN SUM
AND SUBSTANCE FUCK YOU, YOU FUCKING PIG! I AM NOT LISTENING
TO YOU, YOU FUCKING PIG ASSHOLE! GET ANOTHER OFFICER HERE
YOU FUCKING ASSHOLE!" (see disorderly conduct information).

The misdemeanor information for resisting arrest was alleged pursuant to

Penal Law 205.30. The factual section of the information alleges as follows:

"To wit: The defendant, at the corner of Abrahams path (sic) and Accabonac
road (sic) in the Town of East Hampton, Suffolk County, New York, on January
23, 2014 at about 10:56 AM intentionally attempted to prevent a police officer
from effecting an authorized arrest of himself; in that while Police Officer Trotta
#195 was attempting to place the defendant under arrest for the charge of
Disorderly Conduct, the defendant did shove, and flail his arms at Officer Trotta
until the officer eventually subdued him." (see resisting arrest information).

4

The violation information for harassment was alleged pursuant to Penal Law

226.26 (1). The factual section of the information alleges as follows:

"To Wit: THE DEFENDANT, ON JANUARY 23, 2014 AT ABOUT 10:56
A.M. AT THE CORNER OF ABRAHAMS PATH AND ACCABONAC, IN THE
TOWN OF EAST HAMPTON, SUFFOLK COUNTY, NEW YORK, WITH
INTENT TO HARASS, ANNOY OR ALARM ANOTHER PERSON, DID
WRONGFULLY STRIKE AND SHOVE ANOTHER PERSON; IN THAT, THE
DEFENDANT STATED "FUCK YOU PIG" AND THEN WITH INTENT TO
RESIST ARREST DID WRONGFULLY FLAIL HIS ARMS STIKING PO
FRANK TROTTA'S HAND CAUSING A LACERATION, THIS ACTION DID
IN FACT HARASS, ANNOY AND ALARM PO FRANK TROTTA #195." (see
harassment information).

On April 25, 2014, defense counsel moved for a dismissal of the charges

because the informations are facially insufficient. In sum and substance, the motion

to dismiss argued that, 1). the disorderly conduct charge is jurisdictionally

defective, 2). the language alleged as the basis for disorderly conduct is

constitutionally protected, 3). the alleged statements and conduct of the defendant

does not rise to the level of disorderly conduct and 4). the resisting arrest and

harassment charges are premised on an unauthorized underlying offense.

The People opposed and on August 7, 2014, the lower court denied the

motion to dismiss in all respects. In sum and substance, the Justice Court opined

that, 1). the information charging disorderly conduct is sufficient pursuant to

Criminal Procedure Law, 100.40(1), 2). obscene language and/or gestures are not

constitutionally protected free speech where they otherwise meet the requirements

of the statute, 3). the information is sufficient because the conduct complained of

5

sufficiently states a primie facie case for disorderly conduct and 4). the resisting arrest and harassment charges are premised on an authorized underlying offense.

On October 14, 15 and 16, 2014, a jury trial was conducted in the East Hampton Justice Court. Because the court reporter did not number the transcript pages in consecutive order, references herein are made by date, witness and page number.

In sum and substance, the Officer Frank Trotta testified on behalf of the People as follows:

He is a police officer for the Town of East Hampton. On January 23, 2014, he responded to a dispatch regarding a minor traffic accident. Due to icy weather conditions, he was not driving a marked police vehicle. Rather, he arrived alone in a four-wheel drive vehicle maintained by the marine patrol. When he approached the location of the accident, he observed a line of traffic consisting of a few cars and a fuel delivery truck. He saw the appellant talking to the driver of the delivery truck. Trotta testified that he drove up to the appellant, rolled down the window and asked him to move his van. Appellant then responded that he was "waiting for the fucking cops." Trotta informed him he was a police officer despite not being in a police department vehicle. He further testified that he heard the appellant curse at the driver of the delivery truck and then hit the passenger side mirror of the marine patrol vehicle with his elbow as he walked away. Appellant proceeded to his van,

6

followed Trotta's vehicle to the shoulder of the perpendicular road and parked his van away from the other motorist.

Trotta then called for additional police assistance "for an irate motorist." He exited the marine patrol vehicle and approached the appellant. At this point, the encounter ensued that is alleged in the information whereby appellant used obscene language while standing within inches of Trotta in a loud voice. He grabbed his arm and arrested him for disorderly conduct. When he attempted to cuff the appellant, he flailed his arms. After the handcuffs were in place, an additional officer arrived. They subdued the appellant by forcing him chest first into the ground. Trotta testified that the he had sustained a laceration on his hand. More officers arrived and they transported appellant to the local police station in a police vehicle. T. 10/14/14, Trotta, 5-12, 18-20.

On cross-examination Officer Trotta testified that after appellant cursed at him, he placed him under arrest for disorderly conduct. He further testified that prior to the arrest appellant had not caused a public nuisance. T. 10/16/14, 33. Trotta prepared and signed all three informations. (see informations).

In sum and substance, Mr. George Brockway testified on behalf of the People as follows:

Mr. Brockway was the driver of the fuel delivery truck that was present at the scene. He stated that when he arrived at the intersection described, he drove up

7

behind a car and white van. Both vehicles were stopped and he testified that the appellant got out of the van and began yelling obscenities. An officer arrived and told appellant to move the van. Brockway stated that as the appellant walked towards his van, he hit the rear view mirror of the marine patrol vehicle with his elbow and "called the cop an asshole." He left the scene and then returned about five minutes later. His next observation was of the appellant handcuffed on his knees. T. 10/15/14, Brockway, 5-8.

On cross examination, Mr. Brockway testified that only one officer was present when he heard the appellant use the word "asshole." T. 10/15/14, Brockway, 32.

In sum and substance, the Officer Barry Johnson testified on behalf of the People as follows:

He is a police officer for the Town of East Hampton and on January 23, 2014, he responded to Officer Trotta's call for assistance. When he arrived at the scene, appellant was on the hood of the marine patrol vehicle and his hands were cuffed behind his back. He and Trotta further subdued the appellant by forcing him face down into the ground. After more officers arrived they placed him a patrol car for transport. During this process, Johnson stated that appellant was cursing and continuing to resist arrest so they restrained his legs with a belt. T. 10/14/14, Johnson, 4-10, 13.

8

On cross-examination, Officer Johnson confirmed that the appellant was already under arrest when he arrived. T. 10/14/14, Johnson, 19.

In sum and substance, the Officer Vincent Rantinella testified on behalf of the People as follows:

He is a police officer for the Town of East Hampton and on January 23, 2014, he also responded to Officer Trotta's call for assistance. When he arrived he saw that Officers Trotta and Johnson had the appellant in handcuffs. He stated that the appellant was yelling, cursing and struggling. He assisted the other two officers in restraining the appellant by forcing him face down into the ground. He stated that appellant continued to resist when they placed him into a patrol car for transport. T. 10/14/14, Rantinella, 6-11.

On cross-examination, Officer Rantinella confirmed that the appellant was already under arrest when he arrived. T. 10/14/14, Rantinella, 26.

In sum and substance, the Officer Thomas Strong testified on behalf of the People as follows:

He is a police officer for the Town of East Hampton and on January 23, 2014, he also responded to Officer Trotta's call for assistance. When he arrived to the scene in a caged patrol car, he saw the appellant sitting on the ground in handcuffs with a restraining belt around his ankles. The three other officers put

9

appellant in the back of the caged car and he drove to the station. He stated that appellant was yelling obscenities. T. 10/14/14, Strong, 6-7. 14.

The People rested at the conclusion of Strong's testimony and the defense moved for a trial order of dismissal pursuant to Criminal Procedure Law 290.10 and incorporated the prior pre-trial motion to dismiss for facial insufficiency. The trial court delayed decision until the conclusion of defendant's case. T. 10/14/14, 19-24.

In sum and substance, the appellant, William Cuthbert, testified on his behalf as follows:

On January 23, 2014 he was driving home in his commercial van that he uses for his construction business. Due to the extreme cold, the roads were encased in ice. He came to a full stop at a stop sign at the intersection in question. He then saw a car sliding down the hill in front of him and skid diagonally across the two lane road until it collided into the driver's side of his van. The car ricocheted off his van and came to a rest perpendicular in the oncoming lane. He maintained his position at the stop sign and exited his vehicle. Thereafter, a loud diesel truck arrived at the intersection. To be heard over the noise of the diesel engine, he told the driver in a loud voice that an accident had happened and the police would be arriving. He then called his partner, Jana Nishida, and asked her to call the local police to report the accident. It was 10:18 AM. T. 10/14/14, Cuthbert, 8-13.

10

He called Ms. Nishida a second time to ask her to come to the scene. A marine patrol vehicle arrived and parked along side of the diesel truck in the opposite lane. Mr. Cuthbert stated that he then approached the two vehicles and heard the officer tell him to move his van. When he began walking towards his van he heard the officer again and walked back to see what he wanted. The officer again told him to move his van. As he began to so, the marine patrol vehicle drove by him brushing his leg. He slipped on the ice and slapped the passing vehicle. As the vehicle continued, he was struck in the back of his left arm by the passenger side mirror. A photograph depicting injury to the back of appellant's left arm was introduced into evidence.  T. 10/14/14, Cuthbert, 14-17.

The marine patrol vehicle proceeded forward. Mr. Cuthbert followed the officer and parked on shoulder of the perpendicular road. He exited his van and approached the officer who was standing next to the marine vehicle. He said he wanted a "field Sargent (sic)" and asked him if he knew that he had hit him with the mirror of his vehicle. Cuthbert testified that the officer told him: "I don't like your attitude, you are under arrest." He was placed in handcuffs in a manner whereby the nerves in his wrists were damaged rendering him unconscious. The officer put his body on the hood of the marine vehicle. When he regained consciousness, another officer arrived and they lifted him off the vehicle. He was in pain and calling out for help using profane language. A third officer arrived and

11

they forced him face down into the ground while one officer forced a knee into his back. They lifted him by his elbows across the road, put him into a caged patrol car and restrained his legs. The intersection is bordered by a golf course. T. 10/14/14, Cuthbert, 22-24, 27-31, 35.

On cross-examination, Mr. Cuthbert confirmed that he was arrested as a result of his confrontation with Officer Trotta. T. 10/14/14, Cuthbert, 47.

In sum and substance, Jana Nishida, testified on behalf of the defense as follows:

She is the appellant's partner and they have lived together for 13 years. On January 23, 2014, at approximately 10:20 a.m. she received a telephone call from Mr. Cuthbert advising her that he had been involved in a minor traffic accident. She called the local police. She received a second call requesting that she come to the corner of Accabonac Road and Abrahams Path. When she arrived she saw three police vehicles and three officers standing over Mr. Cuthbert who was seated on the ground next to a snow bank. She testified that appellant called to her for help and she asked the officers to loosen the handcuffs. Her request was refused. She used her telephone to take a photograph of an officer with his knee in the appellant's back as he was handcuffed on the ground. It was introduced into evidence. She testified that she observed as at least two officers drag his body

12

across the road by his elbows and throw him face first into a caged patrol car. They then "hog-tied" his legs with a devise that was connected to the handcuffs.

She called the police station to advise them that appellant has various medical issues and that he should receive medical attention. Later that day, he was released and she took him to a doctor. 10/14/14, Nishida, 5-11, 15-17.

On cross-examination, Ms. Nishida confirmed that appellant was under arrest when she arrived and that she was concerned about his injuries. T. 10/14/14, Nishida, 25-26.

At the close of all evidence, defense counsel renewed his 290.10 motion. The motion was denied. T. 10/16/14, 2-11.

The jury's verdict was as follows:

1. disorderly conduct-guilty

2. resisting arrest-guilty

3. harassment-not guilty.

Defense counsel moved to set aside the verdict. The motion was denied. 10/16/14, 136-137.

Appellant was sentenced to a conditional discharge and a total fine of $1,250 plus a $330 surcharge. T. 12/4/14.

ARGUMENT

POINT I

THE LOWER COURT ERRED IN DENYING THE PRE-TRIAL
MOTION TO DISMISS FOR FACIAL INSUFFICIENCY.

A. The accusatory instrument for disorderly conduct is facially insufficient because
it does not factually allege a public dimension.

The lower court opined that "... the Information makes out a primie face

case ... [and] ... [I]t is certainly not clear to this Court that the conduct complained

of in the Information is, as a matter of law, insufficient to support the charge." (see

Justice Court decision, p. 2).

Penal Law, section 240.20, 3., states in relevant part as follows:

> "A person is guilty of disorderly conduct when, with intent to cause *public*
> inconvenience annoyance or alarm, or recklessly creating a risk thereof:
> ... 3. In a public place, he uses abusive or obscene language, or a makes an
> obscene gesture." *Penal Law*, 240.20, 3.; (emphasis added).

It has long been black-letter law in New York that the proscribed conduct

be accompanied by the stated culpable mental state of "intent to cause public

inconvenience." *McKinney's Practice Commentary*, P.L., 240.20, p. 27, citing *Staff

Notes of the Commission on Revision the Penal Law*, p. 388 (1964). In the

landmark case on this issue, the Court of Appeals emphasized that "the disruptive

behavior proscribed by our disorderly conduct statute be of public rather than

individual dimension." *People v. Munafo*, 50 N.Y.2d 326, 331, 428 N.Y.S.2d 924,

(1980). In *Munafo*, a citizen was charged with disorderly conduct because he protested an attempt by the State Power Authority to erect a transmission line across his property by firing a rifle shot across the worker's path. He then positioned himself in front of their backhoe and refused to move despite their demands. The Court held that on those facts, "the differences between the authority and the defendant were confined to these two disputants rather than spread to the public" and defendant was not in violation of the disorderly conduct statute. *Id.* at 322. Further, the Court concluded that the legislature's "clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem. In deciding whether an act carries public ramifications, courts are constrained to access the nature and number of those attracted, taking into account the surrounding circumstances, including, the time and place of the episode under scrutiny." *Id.* at 331.

In the instant matter, the information charging the defendant with the violation of disorderly conduct pursuant to Penal Law 240.20, 3 states in relevant part as follows:

> "... THE DEFENDANT DID WRONGFULLY STATE OBSENITIES IN
> PUBLIC AFTER BEING REQUESTED BY POLICE OFFICER FRANK
> TROTTA #195 TO MOVE HIS VEHICLE FROM THE INTERSECTION
> AFTER BEING INVOLVED IN A REPORTABLE MOTOR VEHICLE
> ACCIDENT. DEFENDANT WAS STANDING WITHIN INCHES OF
> POLICE OFFICER FRANK TROTTA #195 WHILE SCREAMING IN A

LOUD VOICE IN SUM AND SUBSTANCE FUCK YOU, YOU FUCKING PIG! I AM NOT LISTENING TO YOU, YOU FUCKING PIG ASSHOLE! GET ANOTHER OFFICER HERE YOU FUCKING ASSHOLE!" (see disorderly conduct information).

A verbatim reading of the information reveals that the dispute was confined exclusively to the appellant and Officer Trotta. Because it does not state that anyone else was involved or even present, it does not bear a public dimension.

In denying the motion to dismiss for facial insufficiency, the lower court found that that the language in the information satisfies Criminal Procedure Law, section 100.40, 1. (see Justice Court decision, p. 2). This conclusion misinterprets the statute and controlling case law.

This Court remains in step with the intent and rationale of the New York legislature and the Court of Appeals. *People v. Moreno*, 2015 Slip Op 50587(U), App Term 2d (4/9/15);  *People v. Canjura*, 2014 Slip Op 24380, App Term 2d (11/26/14). In *Moreno*, the accusatory instrument charging disorderly conduct stated that "at the St. George Staten Island Ferry terminal, defendant allegedly cursed at a New York City police officer, by stating 'FUCK YOU, THE COP THAT GOT SHOT IN THE FACE DESERVED IT, YOU GUYS ARE GOING TO GET YOURS.'" This Court reversed a local criminal court denial of a dismissal motion for facial insufficiency because "nothing in the factual part of the accusatory instrument alleged that defendant's acts had a public dimension, as is required for a charge of disorderly conduct." *Id.* at 1-3, citing *People v. Baker*, 20

16

NY3d 354, 359 (2013); *People v. Weaver*, 16 NY3d 123, 128 (2011); *People v. Munafo*, 50 NY2d 326, 331 (1980); *People v. Badue*, 22 Misc. 3d 136[A], 2009 Slip Op 50339(U) (App Term, 9th & 10th Jud Dists 2009). It should be noted that reversal was appropriate because the dispute was confined to the officer and the defendant despite the fact that defendant's verbal tirade was accompanied with a threat that the officer would be shot in the face. In the instant matter, the altercation between the disputants did not allude to a potential act of violence.

Here and contrary to the finding of the lower court, a verbatim reading of the information, reveals that it is facially insufficient.

Criminal Procedure Law 100.40 states in relevant part as follows:

"1. An information, or a count thereof, is sufficient on its face when:

(a) It substantially conforms to the requirements prescribed in section 100.15; and

(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and

(c) Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant's commission thereof." *CPL*, 100.40, 1.

The Court of Appeals has concluded that in local criminal courts, the required nonconclusory evidentiary allegations must be contained within the four corners of the instrument itself or in the annexed supporting deposition. *People*

*v.Thomas*, 4 NY3d 143, 146 (2005). The instrument accusing the appellant of disorderly conduct is a simplified "Violation Information" signed and sworn to by the complainant, Officer Trotta. It is not accompanied by any supporting depositions and does not contain the "public dimension" element of the offense charged. Even if every allegation in the information were accepted as true, it fails to state the prime facie elements of the offense. See, *People v. Skrodzki*, 2014 Slip Op 51728(U), App Term 2d (11/26/14), citing, *CPL* 100.40 (1)(c); see also CPL 100.15 (3); 100.40 (1)(b).

In *Skrodski,* the factual allegations of the information provided that the defendant shouted at an officer, "don't you touch me, you fucking pig" and that defendant had became aggressive towards the officer. On appeal, this Court reversed the judgment of conviction and dismissed the accusatory instrument because there were "no factual allegations indicating that the defendant's conduct had a 'public ... dimension.'" *Id.*, citing, *Munafo* 50 NY2d at 331.

Here, as it is with all disorderly conduct informations lacking a public dimension, the instrument accusing the appellant suffers the same fate. In fact, it does not indicate that anyone else was even present other than the appellant and Officer Trotta. However personally offensive it may have been to Trotta, the information specifically states that the appellant's loud and vile language was confined to their individual dimension.

18

This Court acknowledges that dismissal for facial insufficiency is required even when supporting depositions indicate that others were present. *People v. Stewart*, 2011 Slip Op 51445(U), App Term 2d (7/28/11); *People v. Badue,* 2009 Slip Op 50339(U), App Term 2d (2/27/09). In both *Stewart* and *Badue*, supporting depositions to the information indicated that an officer's altercation with an accused resulted in additional officers arriving at the scene. The presence of other officers still "did not give the incident a public dimension." *Stewart*, 2011 Slip Op 51445(U) at 2; *Badue,* 2009 Slip Op 50339(U) at 1.

Here, the analysis need not be so detailed. There is no supporting deposition. If anyone even witnessed the scene, there is no factual allegation attesting to such in the information or a supporting deposition. Hypothetically, even if it had contained a supporting deposition indicating the presence of others, the facial defect would not be cured pursuant to *Stewart* and *Badue*.

The Justice Court "Violation Information" standing alone represents the sole document utilized as the accusatory instrument and the People bear the burden of establishing a prime facie case in its text. *People v. Jones*, 9 NY3d 259 (2007). In *Jones*, the Court of Appeals explained that "'[T]he reason for requiring this additional showing of a primie facie case for an information lies in the unique function that an information serves under the statutory scheme established by Criminal Procedure Law.'" *Id.* citing, *People v. Alejandro*, 70 NY2d 133, 137

19

(1987). "A defendant charged by information does not have the same safe guards as a defendant charged by complaint. For instance, a felony complaint will generally be followed by a Grand Jury proceeding where the People must present evidence demonstrating a primie facie case in order to obtain and indictment. (see *CPL* 190 et seq). Likewise, a misdemeanor complaint must be followed by a supporting deposition. [see *CPL* 100.40(4)(b)]. Here, the prosecution used an information to bring the case to trial, and thus this instrument must set be forth non-hearsay allegations that, if proven to be true, make out every element of the offense charged.[see CPL 100.40(1)(c); CPL 100.15(3)]." *Jones*, 9 NY3d at 262.

As in *Jones*, the violation information in the instant matter is the exclusive source for determining whether the People have alleged a primie facie case. In dismissing an information that was facially insufficient, the Court of Appeals in *Jones* corrected a decision of the Appellate Term, First Department. The *Jones* allegation stated that an officer "observed defendant along with a number of other individuals standing around at the above location, to wit a public sidewalk, not moving, and that as a result of defendants' (sic) behavior, numerous pedestrians in the area had to walk around defendants (sic) … [D]eponent directed defendant to move and defendant refused and as deponent attempted to stop defendant, defendant did run." *Id*. at 261. "Something more than a mere inconvenience to pedestrians is required to support the charge." In fact, the Court of Appeals

20

reasoned that those congregating on a street who display "atrociously bad manners" by "discommod(ing) some other persons" does not alone give rise to disorderly conduct. *Id.* at 262-263.

Therefore, the highest court in New York instructs that not only does the mere presence of others render an information facially insufficient, but that allegations of bad behavior and inconvenience to others also fails in describing a primie facie disorderly conduct case for pleading purposes. This is even true in instances where a group of bystanders gather to stare at a defendant's obscenity laced encounter with an officer on a public street. *People v. Baker*, 20 NY3d 354, 359 (2013). In finding no "public dimension," the Court of Appeals in *Baker* held that there are other offenses in the Penal Law, such as menacing and harassment that are intended to cover altercations of a personal nature. The "public harm" element of the disorderly conduct statute "performs an important narrowing function" that serves to distinguish it from those other offenses. *Id.* at 360.

In conclusion, the lower court erred in denying the motion to dismiss the disorderly conduct information because:

1). The information is the exclusive source for determining if the People have pled a prime facie case. *People v. Jones*, 9 NY3d 259 (2007).

21

2). The disruptive behavior factually described in the information must be of public rather than individual dimension. *People v. Munafo*, 50 N.Y.2d 326 (1980); *PL* 240.20, 3.

3). The encounter between the appellant and Officer Trotta alleges a private dispute. *People v. Baker*, 20 NY3d 354 (2013).

4). This Court consistently acknowledges Court of Appeals holdings regarding the facial insufficiency of disorderly conduct informations of private dimension. *People v. Moreno*, 2015 Slip Op 50587(U), App Term 2d (4/9/15); *People v. Canjura*, 2014 Slip Op 24380, App Term 2d (11/26/14); *People v. Skrodzki*, 2014 Slip Op 51728(U), App Term 2d (11/26/14); *People v. Stewart*, 2011 Slip Op 51445(U), App Term 2d (7/28/11); *People v. Badue*, 2009 Slip Op 50339(U), App Term 2d (2/27/09).

B. The resisting arrest charge is facially insufficient because it is not predicated on an authorized underlying arrest for disorderly conduct.

In the motion to dismiss, appellant contended that because the disorderly conduct charge was illegal, the subsequent arrest for resisting arrest and harassment are necessarily invalid. The Justice Court opined that this argument is moot. (see Justice Court decision, p. 3).

The information for the resisting arrest charge states in relevant part:

" … while Police Officer Trotta #195 was attempting to place the defendant under arrest for the charge of Disorderly Conduct, the defendant did shove, and

flail his arms at Officer Trotta until the officer eventually subdued him." (see resisting arrest information).

A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an *authorized arrest* of himself or another person. *Penal Law*, 205.30; (emphasis added). The allegations in the information that appellant resisted arrest are insufficient because there are no allegations of evidentiary character that, if true, would establish that the underlying arrest was authorized. As argued above, the allegations regarding appellant's commission of disorderly conduct are facially insufficient. Therefore, the information is left without any allegations that would support that the arrest was authorized.

The Court of Appeals has repeatedly reminded us that the key element of resisting arrest is the requirement that the arrest be authorized. *People v. Jensen*, 86 NY2d 248, 253 (1995); *People v. Alejandro*, 70 NY2d 133 (1987); *People v. Peacock*, 68 NY2d 675, 676-677 (1986); *People v. Parker*, 33 NY2d 669 (1973). When the information fails to allege sufficient facts to support disorderly conduct, those facts cannot be deemed sufficient to allege that the arrest was authorized pursuant to Penal Law 205.30. *People v Jones*, 9 NY3d 259, 263 (2007).

Here, as a matter of both fact and law, the People have not alleged that the disorderly conduct arrest was "authorized" as a predicate to the resisting arrest charge. Without the key element to a primie face case for the offense, the resisting

23

arrest charge must be dismissed. Necessarily, the trial evidence must also fail to establish the elements of resisting arrest. (see *Donnino, Practice Commentary*, McKinney's Cons. Laws of NY, 39 Penal Law 205.30 at 326).

The same legal reality befalls the harassment charge which states in relevant part:

> "… THE DEFENDANT STATED 'FUCK YOU PIG' AND THEN WITH INTENT TO RESIST ARREST DID WRONGFULLY FLAIL HIS ARMS STRIKING PO FRANK TROTTA'S HAND CAUSING A LACERATION. THIS ACTION DID IN FACT HARRASS, ANNOY AND ALARM FRANK TROTTA #195." (see harassment information).

As is stated in the information, this charge, like the resisting arrest charge, was incident to the unlawful arrest for disorderly conduct. Of course, this argument is academic because there is no conviction for harassment. However, it remains germane to recognize that the Court of Appeals has instructed that in the absence of an authorized predicate offense, striking an officer in reaction to an officer's attempt to detain the accused cannot constitute harassment. *People v. Peacock*, 68 NY2d 675 (1986).

## POINT II

## THE LOWER COURT ERRED IN DENYING THE 290.10 MOTION.

As argued above in Point I above, the accusatory instrument for the other charges disorderly conduct is facially insufficient. Therefore, the subsequent informations for other charges are also insufficient in the absence of a predicate

underlying offense. The lower court erred in not granting the motion to dismiss. The argument below is offered in the event that this Court is not inclined to agree.

After the defense rested its case, and after the close of all evidence, defense counsel made a motion, pursuant to *C.P.L.* § 290.10(1)(a), to dismiss upon the grounds that the trial evidence was legally insufficient to establish the offenses charged. Specifically, counsel moved as follows:

"… the first thing I want to remind the Court of is during Officer Trotta's testimony this week on page 33 of the transcript. We'll start on line 9.

'You placed him under arrest?

Answer: Yes

Question: For what?

Answer: Disorderly conduct.

Question: Now did a crowd assemble around the incident?

Answer: Just motorist, I believe there was.

Question: Did he cause a public nuisance, did he bother the public or was there a public nuisance by him?

Answer: *Not that I know of, no*.'"

T. 10/16/14, 3; (emphasis added).

The trial court denied defendant's application. An incredulous defense attorney queried the judge as follows:

25

"MR. GIANNINI: What is nature of the public nuisance?

THE COURT: Yelling and cursing in a loud voice where other people were there to hear it. "

T. 10/16/11, 10-11.

Remarkably, even after Officer Trotta's testimony conceding that there was no public dimension to appellant's conduct, the trial court remained oblivious to basic black letter law regarding disorderly conduct. see *Penal Law*, 240.20, 3; *People v. Baker*, 20 NY3d 354 (2013); *People v Jones*, 9 NY3d 259, 263 (2007); *People v. Munafo*, 50 N.Y.2d 326, 331, 428 N.Y.S.2d 924, (1980). It is respectfully submitted that the trial court erred in denying the defendant's motion.

It is well-settled that the defendant may, at the conclusion of the People's case or at the conclusion of all evidence, move the court to dismiss any count of the indictment for which the People have failed to establish a prima facie case.

*C.P.L.* § 290.10(1) states:

"At the conclusion of the People's case or at the conclusion of all the evidence, the court may, except as provided in subdivision two, upon motion of the defendant, issue a "trial order of dismissal," dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense."

26

Here, the trial court is under the mistaken legal opinion that merely yelling obscenities in the presence of others constitutes disorderly conduct. Even if the trial evidence established that someone other than Trotta was offended by appellant's behavior before he was arrested, this Court consistently adheres to Court of Appeals holdings that allegations of bad behavior in public fail to describe a primie facie case for disorderly conduct. Disorderly conduct is not found even when a group of bystanders gather as a result of an obscenity laced encounter with an officer. *People v. Baker*, 20 NY3d 354, 359 (2013); *People v. Moreno*, 2015 Slip Op 50587(U), App Term 2d (4/9/15); *People v. Canjura*, 2014 Slip Op 24380, App Term 2d (11/26/14); *People v. Skrodzki*, 2014 Slip Op 51728(U), App Term 2d (11/26/14); *People v. Stewart*, 2011 Slip Op 51445(U), App Term 2d (7/28/11); *People v. Badue,* 2009 Slip Op 50339(U), App Term 2d (2/27/09).

The Justice Court commented that it premised the denial of the 290.10 motion on *People v. Weaver*, 16 NY3d 123 (2011). In *Weaver*, a recently married couple were having an obscene laced, loud argument in a hotel parking lot at 1:25 in the morning. A police officer arrived and observed a man waving his arms at the woman and yelling at her to "get the fuck away from me." The officer asked the man to calm down and told the couple to "take *their dispute* somewhere else." The seemingly intoxicated man screamed at the officer to "shut the fuck up." The man

27

then continued to hurl obscenities *at his wife* and the officer. After a third warning, the officer arrested him for disorderly conduct. *Id.* at 125-126; (emphasis added).

In concluding that the trial evidence constituted disorderly conduct, the Court of Appeals observed that it is necessary to weigh the facts of the entire incident. First, the dispute was between the defendant and his wife at 1:25 a.m. in a hotel parking lot where guests were sleeping. The officer was included in the dispute after he arrived. The hotel parking lot was next to a gas station/mini-mart where customers were pumping gas and using the store ATM. The officer warned the man three times to cease his conduct and leave his wife alone. Based on the events leading up to the arrest, the evidence supported the elements of a disorderly conduct charge. *Id.* at 128-129.

Here, as expressly stated in the information and testified to at trial, the dispute was exclusively between the appellant and Officer Trotta. It occurred at 10:56 a.m. at a rural intersection bordered by a golf course. It can be reasonably inferred that on a frigid day in January, there were no golfers. The only evidence indicating that a member of the public was even aware of the dispute came from Mr. Brockway who left the scene and then, out of curiosity, returned about five minutes later only to find the appellant handcuffed on his knees. T. 10/15/14, Brockway, 5-8. This is not indicative of a person who felt inconvenienced.

It appears that the lower court randomly chose to be guided by a case that just happened to affirm a disorderly conduct conviction. Fortunately for the remainder of the legal community, the use of case law as authority requires an assessment of factual similarity.

To be sure, the version of events as testified to by Trotta and the appellant is disparate. What remains consistent is that both parties describe a dispute exclusively confined to themselves. Even if Trotta's entire testimony is accepted as true, there is no disorderly conduct in the absence of a public dimension. For the same reasons as argued in Point I, there is no resisting arrest in the absence of the underlying predicate offense. The lower court erred in denying the 290.10 motion.

POINT III

THE LOWER COURT ERRED IN DENYING THE 330.30 MOTION.

As argued above in Points I and II above, the lower court erred in not granting the motions to dismiss. The argument below is offered in the event that this Court is not inclined to agree.

After the jury verdict, defense counsel moved to set aside the verdict pursuant to Criminal Procedure Law 330.30. Counsel noted that the guilty verdict for resisting arrest was inconsistent with the not guilty verdict for harassment. Because both offenses are necessarily predicated on the underlying charge of disorderly conduct, the verdict is irreconcilable as a matter of law. The motion was

29

denied. 10/16/14, 136-137. More importantly, the verdict was against the weight of the evidence because the jury could not have found the essential elements of disorderly conduct beyond a reasonable doubt.

(There is no argument that a disruptive confrontation occurred. Here, the jury was left with the testimony of the appellant, and four police officers to determine if that the confrontation bore a public dimension. The only prosecutorial evidence that came from a member of the public was that of Mr. Brockway who can best be described as someone who merely witnessed the argument. The People's evidence attempting to convey a public dimension can hardly be described as overwhelming. Without it, the other evidence, standing alone does not establish that appellant committed the offense of disorderly conduct. Therefore, there was insufficient evidence to satisfy a reasonable jury that the offense of disorderly conduct had been committed. In *People v Delamota*, 18 N.Y.3d 107, 116-17 (2011), the Court of Appeals reaffirmed the importance of an intermediate appellate court's "special power [which obligates it] to affirmatively review the record; independently assess all the proof; substitute its own credibility determinations for those made by the jury in an appropriate case; determine whether the verdict was factually correct; and acquit a defendant if the court is not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt. In effect, the intermediate appellate court "serve[s] ... as a second jury," or as a "thirteenth juror" and this

"unreviewable" power to "rectif[y] an unjust conviction extends not only to questions of credibility but to the elements of the crime" even though the evidence may be found to be legally sufficient. *Delamota* 18 N.Y.3d at 117; *People v Cahill*, 2 N.Y.3d, 14, 58 (2003); *People v Farrell*, 61 AD.3d 696, 697 (2d Dept. 2009); *People v Farkas*, 96 AD.3d 873 (2d Dept. 2012); *People v Danielson*, 9 N.Y.3d 342 (2007).

As reaffirmed by the Second Department in *People v Bailey*, 94 AD.3d 904, 904-05 (2d Dept.) lv. denied., 19 N.Y.3d 957 (2012), "[u]pon the defendant's request, the Appellate Division must conduct a weight of the evidence review and, thus a defendant will be given one appellate review of adverse factual findings. Weight of the evidence review requires a court to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt ..." Unlike the legal sufficiency review, arguments that the verdict was against the weight of the evidence do not require preservation. *People v Noble*, 86 N.Y.2d 814 (1995); *People v Alford*, 65 A.D.3d 1392, 1393 (3d Dept. 2009), aff'd as mod., 14 N.Y.3d 846 2010).

Here, because the primie facie elements of disorderly conduct were not factually established, the verdict was against the weight of the evidence.

## CONCLUSION

For the reasons stated, Defendant-Appellant respectfully requests that the informations be dismissed and/or the convictions vacated.

Respectfully submitted,

_____

Del Atwell, Esq.

## CERTIFICATE OF COMPLIANCE

It is hereby certified that this brief conforms to CPLR 5529 and sections 670.10.1, 670.10.3 of the rules of this Court. It was prepared on a computer utilizing a helve, 14 point proportionally spaced typeface. It is double paced and contains 7167 words.

_____

Del Atwell, Esq.

Dated: January 13, 2016

32