# In the United States District Court for the Eastern District of New York (Islip)

WILLIAM E. CUTHBERT,
Plaintiff - Movant,

v.

THE TOWN OF EAST HAMPTON, NEW YORK;
FRANK TROTTA; and HARRY JOHNSON;
Defendants - Respondents.

Rule 59(e), 60(b)(6), LR 6.3  Request for Relief from Prior Order and for Reconciliation
FRE § 201 Request for Judicial Notice

Civil Action No. 18-CV-4796 ( JS) (AYS)

## MEMORANDUM OF LAW OF PLAINTIFF-MOVANT *PRO SE* WILLIAM CUTHBERT

This memorandum was initially prepared with the substantial assistance of
Frederick M. Oberlander, *pro bono* counsel admitted in New York State and
in this Court , who cannot generally appear for Plaintiff but has written this for him.
However, Plaintiff has agreed that Mr. Oberlander may make a limited appearance for
him subject to a limited scope representation whereby his work in this case will be strictly
constrained to securing a vacatur of dismissal either entirely or as to state claims.

## ORAL ARGUMENT REQUESTED

i

# CONTENTS

I. RELIEF SOUGHT BY, AND NATURE OF, THIS MOTION ................ 1

   A. *Relief Requested* ........................................................................................ *1*

      1. Two Examples of a Proposed Modified Order ........................................ 1

   B. *The Motion Is Timely* ................................................................ *2*

II. STATEMENT OF THE CASE ..................................................... 3

III. ARGUMENT: PLAINTIFF CAN PERHAPS WELL PLEAD IN § 1983 FOR UNDERLYING CONSTITUTIONAL TORTS .......................... 5

   A. *The Current State of § 1983 Law Is Sufficiently a Mess That Fairness Requires This Court Give All Possible Consideration to Plaintiff to This Point (He Has of Course Been Assisted by Counsel on This Motion)* ...................................................... 5

      1. Example of Degenerating Chronicity: Qualified Immunity ..................... 5

      2. Example of Degenerating Chronicity: *Heck-Williams-McDonough-Manuel* ............. 5

   B. *Legal Requirements of a § 1983 Claim as Applicable Here* ............ 5

   C. *Plaintiff Has a Colorable § 1983 Claim for Malicious Prosecution* .................................................................... 6

IV. ARGUMENT: PLAINTIFF CAN WELL PLEAD IN ANCILLARY STATE COMMON LAW TORT ................................................... 9

   A. *Malicious Prosecution* ............................................................ 9

   B. *False Arrest* ........................................................................ 10

V. A VENUE ISSUE: WHICH AMERICA ARE WE LITIGATING IN ....... 11

VI. CONCLUSION ..................................................................... 12

I.      **RELIEF SOUGHT BY, AND NATURE OF, THIS MOTION**

*B&#37;*     *Relief Requested*

On May 19, 2020, this Court entered *qua* final judgment, ECF 31, granting the FRCP § 12(b)(6) motions of all Defendants to dismiss all Plaintiff's claims, which claims sounded in § 1983 constitutional and state common law tort, ending the case with prejudice. Notably, the Court held that giving Plaintiff leave to amend his original complaint – he has never done so – would be futile as its shortcomings were substantive.

For reasons stated below, which come down to Plaintiff's disagreement with the Court's analysis of the interplay of substantive and procedural aspects of § 1983 in the contexts of false arrest, malicious prosecution, and related constitutional torts.

In sum, Plaintiff has a case buried in him, still timely, but unfortunately buried under a ton of dross submitted in good faith by a *pro se* plaintiff with little if any help from lawyers (for the record, I, assisting counsel on this motion, ***had nothing to do with preparation or submission of anything that went into this Court before a May 18, 2020***, FRCP § 6 motion to enlarge time.) This is addressed further below.

1.     **Two Examples of a Proposed Modified Order**

*Plaintiff makes the record that he asks, (1) vacatur of that order and its reissue dismissing § 1983 claims by § 12(b)(6) and state law claims without prejudice, the court in discretion not taking supplemental jurisdiction of them after dismissal of federal claims (Plaintiff objecting to retention of jurisdiction) so he may continue them in state court[1]; or (2)*

---

[1] *See Cohen v. Postal Holdings*, 873 F.3d 394 (CA2 2017), Calabresi, concurring:

> [T]he default rule is that federal courts should not decide related state-law claims unless there is good reason…See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, ***the state claims should be dismissed as well***.")…
>
> ***[O]ur circuit takes a very strong position that state issues should be decided by state courts***. Our circuit is probably the circuit that most frequently certifies questions to state courts. The…policy

*vacatur dismissing the case with prejudice unless Plaintiff, within 60 days (with lockdown and difficulty obtaining help) of entry, files and serves a First Amended complaint in compliance with the Court's Individual Rules; in either case eliminating certification of Plaintiff's bad faith if he appeals forma pauperis.*

A%     *The Motion Is Timely*

The Court will please take note that an apparent inconsistency between LR 1.4 and FRCP §§ 59 and 60 has for some number of years been resolved decisionally to allow 28 days for this filing in general and for purposes of tolling FRAP § 4 even though the LR says 14 days, and to recognize that citation to any of those rules is not significant here as they will all, and each of them, allow this prayer for relief.[2]

---

suggests that federal courts most often ought to leave state issues to state courts as readily and as early in a proceeding as possible…

*[If] neither party asks the court to decline…supplemental jurisdiction over…state-law claims…where the federal district court has not expended a significant … time on the case, and …state-law issues are complex and uncertain, we have held it…an abuse of discretion for the court to exercise supplemental jurisdiction over purely state-law claims*. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (CA2 2003) (collecting c ases). [T]he complexity of the state-law issues suffices to make the court focus on the default rule, *even in the absence of a request by any of the parties*. Having done so, *a district court ought not to exercise supplemental jurisdiction over purely state-law claims unless there are strong reasons for doing otherwise. In such cases we, in reviewing district court decisions, can, in effect, choose to overlook the parties' forfeiture, and order dismissal of the state-law claims*. *See also Kolari v. N.Y.-Presbyterian Hosp*., 455 F.3d 118, 122 (CA2 2006) (district court's…decision to exercise supplemental jurisdiction "an error of law,"…an abuse of discretion, without considering whether either party ever asked the district court to remand the state-law claims).

[2] *Levitant v. Workers Comp. Bd. of N.Y.*, 2019 U.S. Dist. LEXIS 194852 (EDNY):

Even if Levitant had [moved] in 59(e ) and LR 6.3, 14-day LR 6.3 limit  only applies unless otherwise provided by Court, statute or rule. [M]ost courts  [find] LR 6.3 does not supplant limit for 59(e)motions.  *Smith v. City of New York*, No. 12 Civ. 8131 (JGK), 2014 U.S. Dist. LEXIS 78475, (SDNY) (14-day LR 6.3 limit does not…trump limits in 59(e) and 60(b) for motion to modify judgment); *Simpson v. City of New York*, No. 12 Civ. 6577 (KBF), 2014 U.S. Dist. LEXIS 20699 (SDNY 2014) (28-day 59(e) limit supersedes 14-day LR 6.3 limit).

2

## II.   STATEMENT OF THE CASE

Can state or local police, within the bounds of the United States constitution, attack a citizen on US soil, arrest him without reason or cause, and use excessive force to do so? The answer, of course, is no. Several hundred million persons would agree, judging from coverage of Floyd-related protest. Surely, that Plaintiff is white doesn't make it any better. Nor can police then instrument, perhaps with participation of state or local prosecutors, even dare one say a state or local judge, his malicious prosecution by venally charging him, ***even convicting him, of acts they know don't constitute crimes.***

. That's what Plaintiff says happened to him by his East Hampton home, for no reason but malice. Defendant officers involved haven't denied it happened; *they can't*. There's not enough duct tape in the world to hold together the foundation they'd need to build *that* house of cards, impeaching first their witnesses, *then themselves*. No, they say, "We *can* do this with impunity, by *jurisdictional technicality* make up crimes that don't exist, if prosecutors and judges go along  convict, and if Appellate says, 'It's not a crime,' reversing, we'll rely on illusory Second Circuit authority that the NY Court of Appeals says the US Constitution allows it." *This is an epic fail.*

Plaintiff is aware of your honor's history in public defense and civil rights and understands no further lecture about human dignity is required. Counsel helping him apologizes if even this minor vehemence has gone too far. But times are what they are.

Because assisting counsel lives near the *locus delicti* and is well-known, in April 2020 he was asked to help prepare an FRCP § 72(b) objection to the magistrate's R&R advising dismissal. But seriously ill health barred much, and maybe too much damage had been done by excessive prior submissions. Still, because of filing and related errors Plaintiff and others made, counsel feels he ought to explain and apologize for them: though they know not what they did, their motives were pure.

Plaintiff asks the Court to accept the following brief *de novo* presentation of the factual

3

and procedural histories that got us here. Nothing like it is usually filed. It's vital as when all is said and done, Plaintiff has a case in him somewhere, which ought to be pleadable by a Rule § 15 amended complaint, despite the Court's contrary opinion.

  Plaintiff was arrested at the scene of a minor (no injury) traffic accident on a charge of disorderly conduct ("discon"). He was roughed up during arrest; there is no doubt, between his testimony, medical evidence, police records, and percipient witness testimony from his fiancée. But it was abuse, not murder. No bones were broken, or permanent visible scarring or life-changing disability induced. And while it's true that the arresting officer kept his knee on Plaintiff's back a long time, and it was injurious, and humiliating (he was kept pressed to iced-over ground for nearly an hour), it wasn't pressed to his neck, he wasn't pleading that he couldn't breathe, and he didn't die.

  Except perhaps he did, in a way, inside. And *if* he did, *if* his psychic injuries were such that each day after he awoke miserable, feeling powerless – not all permanent scars are visible – if, for example, he no longer could enjoy what he did because of complex emotional responses of guilt, or concern he shouldn't be enjoying anything, but spend his time gathering nuts against a future time he'll be humiliated by those paid to serve and protect…Well it's possible he can sue for that here, now, by amending, or in state court by the court's dismissal without prejudice of the state law claims. That's the *raison d'etre* for this motion. We ask the Court be forgiving in not over-interpreting this, but one may be assured that from his perspective he feels worse now as he believes the courts let him down too. Please be assured no one expects this Court to mold itself to behavior he finds anodyne. All that is expected is that the Court consider whether he *can* plead a case and if so modify its order of dismissal and reissue as set forth in the section immediately proceding, viz.

### III. ARGUMENT: PLAINTIFF CAN PERHAPS WELL PLEAD IN § 1983 FOR UNDERLYING CONSTITUTIONAL TORTS

*B.* *The Current State of § 1983 Law Is Sufficiently a Mess That Fairness Requires This Court Give All Possible Consideration to Plaintiff to This Point (He Has of Course Been Assisted by Counsel on This Motion).*

At the outset, it must be said that the state of § 1983, especially in this circuit, is a mess. That shouldn't be a surprise, as Civil War-era law would not likely have been designed to fit well within what law would be 200 years in the future, and it doesn't. For want of better term, Plaintiff will refer to some of these problems as those of a degenerating chronicity, meaning those which (as may be proven mathematically, but not in this paper) inevitably become more and more a mess over time.

1.  **Example of Degenerating Chronicity: Qualified Immunity**

Semble the entire world is now well-familiar with this judge-made doctrine that says, "Let's fix it so Officer D isn't liable to Plaintiff P for beating him to a pulp with a metric wrench because there's no case with such facts before, such that D would know not to do that because, well, it's a constitutional crime – even though we have case law saying it's illegal to do it with an *English* wrench, clearly that's well distinguishable…"

2.  **Example of Degenerating Chronicity:** *Heck-Williams-McDonough-Manuel*

If one can show us significant federal jurisprudence in equitable tolling taking place at the time the KKK was lynching Reconstruction-era minorities, we would love to see it. Yet at least 80% of § 1983 case law in the last few decades has involved interplay of statutes of limitations, tolling, estoppel, accrual, continuing tort, etc.

*A.* *Legal Requirements of a § 1983 Claim as Applicable Here*

 **(a)** One must plead the constitutional injury and the factual elements of same. It's pretty irrelevant what article or amendment one asserts controls; one can argue a right to trial without fabricated evidence can be sourced to divers

5

      amendments without affecting a result.

**(b)**    One must plead the factual elements to the appropriate standard.

**(c)**    Claim accrual follows federal law. Limitations periods follow state law to the extent tort analogue or general or savings periods exist.

**(d)**    Continuing harm and continuing wrong aren't the same. If a wrong goes on for years, the claim accrues immediately, but the statute doesn't run till the wrong stops, even if the harm continues past that.

**(e)**    There's no equitable toll, we're stuck with a mess the constellation of *Heck*, *Williams*, *McDonough* , and *Manuel* creates on such issues as impugning metaphysically possible convictions and timing.

**(f)**    This circuit allows a partial malicious prosecution case where, for example, there were several charges and only one had the innocencesuggesting favorable termination mistakenly believed to be required.

**(g)**    Case law on a need for innocence-suggesting favorable termination of typically fails to consider that reversal of a conviction on appeal where grounds of facial insufficiency exist alongside other bases like *legal* innocence (complete absence of evidence by which to convict), and the appellate Court reverses on insufficiency without reaching the other grounds by mootness; a § 1983 court may search the record to establish that beside facial insufficiency there was legal innocence.

**(h)**    Nominal damages, even merely declaratory relief suffice to maintain a § 1983 claim, or even purely equitable relief. Plaintiff is entitled to his day in court even if he cannot establish large causal damages.

**(i)**    There's no constitutional right not to be prosecuted maliciously, but we pretend there is because, well, one *did* note § 1983 is just a mess.

### D. *Plaintiff Has a Colorable § 1983 Claim for Malicious Prosecution*

Semble the entire world is now well-familiar with this judge-made doctrine that says, "Let's fix it so Officer D isn't liable to Plaintiff P for beating him to a pulp with a metric wrench

6

because there's no case with such facts before, such that D would know not to do that because, well, it's a constitutional crime – even though we have case law saying it's illegal to do it with an *English* wrench, clearly that's well distinguishable…"

      Plaintiff concedes the legal and factual correctness of the Court's determination that (1) the § 1983 claims he made, sounding in (1) false arrest for lack of probable cause and excessive force during same, and (2) malicious prosecution, are all subject to the same limitations periods imported from New York state law of 3 years and accrual rules found in federal law of (1) the date of arrest, as to false arrest; and (2) the date of any favorable termination as would indicate actual innocence, as to malicious prosecution. As there is no known extrinsic issue that might justify tolling (minority, incapacity, etc.) in the absence of any coming to light very shortly Plaintiff concedes (1) the excessive force § 1983 claim was time-barred before the commencement of this matter; (2) in the absence of any *Manuel v. City of Joliet*, 137 S. Ct. 911, 197 (2017) issues, false arrest continuing wrong based upon continuing detention which commenced pre-charge, the false arrest claim was time-barred before the commencement; and (3) the malicious prosecution claims accrued upon a favorable termination, but while there was one such termination by acquittal at trial in 2014 of harassment, that was time-barred before the commencement.

      Plaintiff vehemently disagrees however with the Court's determination that the malicious prosecution claims for the prosecution of false arrest and resisting arrest will not support malicious prosecution in § 1983 on the court's (precedentially supported) theory that the termination must be indicative of innocence and the termination here by appellate reversal on the "technicality" of pleading insufficiency.

      Rather, after exhaustive research, Plaintiff believes that no court court (or any ever considered the ramification of such a proposition in a § 1983 action where there is significant available evidence, even that capable of FRE § 201 notice, of *legal innocence*.

      By legal innocence, in this context, Plaintiff means the situation, as transpired here, where what he was charged with, the facts stated in the charging instrument, even if not

insufficient (in other words, even if all complete), simply do not as a matter of law constitute a crime, or at least the crime prosecuted.

For example, New York recognizes the right of a one being unlawfully arrested to use necessary force to resist, and that lack of probable cause to arrest makes the arrest illegal *per se*. Therefore, where as here there were inconsistent verdicts, because it is not possible to acquit on harassment while convicting on resisting arrest, and where the trial record shows Officer Trotta's sworn testimony as to facts which taken as true make probable cause impossible to have ever existed, and he may be estopped to deny or to change that testimony or otherwise sanctioned (the citation escapes Plaintiff, but there is case law that says when an attorney files verified papers then subsequently files more verified papers contradicting what was sworn to in the first set, it is a presumptive ethics violation, presumably something similar must apply with law enforcement officers.

Without belaboring the point here, Plaintiff requests that he be permitted to amend to plead malicious prosecution based on a termination in fact, that is from the clear record of the trial, regardless of the mootness problem in the state appeal preventing that court from reaching the issue, was indeed conclusive or at at the very least consistent with legal innocence.

8

## IV. ARGUMENT: PLAINTIFF CAN WELL PLEAD IN ANCILLARY STATE COMMON LAW TORT

### B. *Malicious Prosecution*

Like its § 1983 counterpart, this tort accrues upon favorable termination, but unlike the § 1983 flavor, the statute runs for one year, not for three. So, again, a claim based on the 2014 acquittal on harassment was time-barred before the commencement. And again, a claim based on the 2017 favorable termination of disorderly conduct and resisting arrest would not have been time barred because they would have accrued less than a year before the commencement. But – this is key – wouldn't they be subject to the same problem as a § 1983 flavor of malicious prosecution, again requiring favorable termination indicative of innocence?

No. The Court itself in its own memorandum of law, ECF 30, cites the cases, in fact relies on them, that support that answer, which for emphasis is again, "NO!" That's because the case in question, *Lanning v. City of Glens Falls*, 908 F.3d 19 (2018) makes clear that (1) state tort law is at best a guide to what the federal law for the lookalike § 1983 should be, but is not determinative; and confirmed that 20 years ago state law and that federal law diverged:

> In 2000…the Court of Appeals, in *Smith-Hunter v. Harvey* …for the first time characterized favorable termination language in its prior cases as dicta; it…"reject[ed] the notion" that a plaintiff asserting a State tort claim for malicious prosecution, at least under the " circumstances" in that case, " demonstrate innocence…to satisfy the favorable termination prong." 95 N.Y.2d 191 (2000). In 2001, in *Cantalino v. Danner*, 96 N.Y.2d 391, 754 (2001), the Court of Appeals…[characterized] *Smith-Hunter* as holding "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding termination are not inconsistent with the innocence of the accused," 96 N.Y.2d at 395. The "rule in *Smith-Hunter*," the Court of Appeals [said] "is one of general application," id. at 397. The termination…involved a dismissal in the interest of justices…uch a dismissal, the Court of Appeals concluded, can count as a favorable termination where the court's reasons for dismissing are "not inconsistent with . . . innocence." Id. at 395. With that, *Cantalino* appeared to deviate…from traditional common law of torts, which, in the Restatement, requires a favorable termination affirmatively indicate the innocence of the accused. *See* Restatement § 660 cmt. a (criminal proceedings terminate in favor of the accused only when final disposition is such as to indicate innocence of the accused").

9

With the added support of Plaintiff's legal innocence theory, supra, surely this Court must one way or the other allow him to plead the malicious prosecution claim in state law appropriate.

### B.   *False Arrest*

The tort in New York has by recent decision of the Court of Appeals been held to accrue at the time of favorable termination, and so a state law claim clearly relating back will not be time-barred with respect to harassment and disorderly conduct. Again, Plaintiff must be allowed to plead same.

## V.   A VENUE ISSUE: WHICH AMERICA ARE WE LITIGATING IN

***The past is never dead. It's not even past***. When I was little, my mother said if when I went for a walk I got upset, find a policeman. Children's books said police are your friends and take you home if you're lost (after they take you to the station and give you ice cream). That's where I lived, in a place called America. I still live there, but I'm old and ill so can't go for a walk now without worrying I'll contract a virus and die. Besides suing God, there's little I can do about why I can't take a walk without fearing for my life. That's why it's called an act of God. But some now for the first time feel like Plaintiff has always felt, afraid to go for a walk as he is afraid to go for a drive without fearing for their lives, not by act of God, but by act of man. I refer to those affected by what happened in Georgia, in Minnesota, in Arizona. People who never thought about going out for a walk in broad daylight, not in 21st century America, even if black, or whatever someone hates at the moment, now wonder which America they inhabit.

We fought a civil war to unite what *was* two Americas so anyone could walk without wondering if they'd get home alive. So many react with outrage for they never lived in the America where they had to worry, *because we put an end to it*. One way was the passage of post-Civil War laws like § 1983. But a lesson we must relearn is, times change but people don't, we can't let our guard down. That's why this case matters. Some may imagine Plaintiff has a sad life from years of parental abuse, detachment disorder, stress. Sometimes all one *can* do is sue God, it's no one's fault, bad lives happen to good people. But sometimes it *is* someone's fault. For vindication, he won't have to sue God; suing defendants will do. He messed up some of the case, but some shortfalls are fixable. Facts are clear: he took a drive in what he thought was *his* America minding his business and without reason got beaten up by police paid to protect him who maybe an hour before were in that other America buying ice cream for a lost little kid.

The question is, in which America does this court sit; the issue is, as he can't sue God, will it give him the second chance fundamental fairness and rules of procedure say it should to sue those who think they are God because they wear a uniform and carry a badge and a gun?

## VI.   CONCLUSION

Wherefore the above, Plaintiff prays this court for the relief set forth supra, the vacatur and subsequent modification of the order of dismissal and final judgment, and prays for such other relief, whether in law or equity, as this Court deems just and proper.

June 16, 2020

/s/ Frederick M. Oberlander
Special limited counsel for Plaintiff

12